Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellant *v.* Christian J. Eichhorn, Appellee.

Submitted on briefs January 31, 1983, to Judges BLATT, MACPHAIL and DOYLE, sitting as a panel of three.

*Harold H. Cramer,* Assistant Counsel, with him *Ward T. Williams,* Chief Counsel and *Jay C. Waldman,* General Counsel, for appellant.

*Bradford J. Harris, Zimmerman, Pfannebecker & Nuffort,* for appellee.

OPINION BY JUDGE MACPHAIL, April 14, 1983:

This is an appeal by the Department of Transportation, Bureau of Traffic Safety (DOT), from an order of the Court of Common Pleas of Lancaster County which sustained a demurrer to DOT's evidence in the appeal of Mr. Eichhorn from a five year revocation of his operating privileges as a habitual offender pursuant to the provisions of Section 1542(a) of the Vehicle Code (Code), 75 Pa. C. S. §1542(a).[1]

The relevant facts were stipulated. Mr. Eichhorn's driving record disclosed the following offenses:

April 28, 1977—violation of Section 1038 of The Vehicle Code (1959 Code)[2] (driving without lights to avoid identification or arrest).

---

[1] Section 1542(a) reads as follows:

(a) *General rule.*—The Department shall revoke the operating privilege of any person found to be a habitual offender pursuant to the provisions of this section. A "habitual offender" shall be any person whose driving record, as maintained in the department, shows that such person has accumulated the requisite number of convictions for the separate and distinct offenses described and enumerated in subsection (b) committed after the effective date of this title and within any period of five years thereafter.

[2] Act of April 29, 1959, P.L. 58, *as amended, formerly* 75 P.S. §§101-2521, repealed by the Act of June 17, 1976, P.L. 162.

March 4, 1978—violation of Section 3731 of the Code, 75 Pa. C. S. §3731 (driving under the influence of alcoholic beverages or a controlled substance).

March 9, 1980—violation of Section 3731 of the Code.

Mr. Eichhorn demurred to DOT's evidence because not all of his offenses were committed after the effective date of the Code and Section 1038 of the 1959 Code is not an offense identified in Section 1542 as one to be considered in a determination of whether he was a habitual offender. Since the trial court found that the April 28, 1977 offense should not have been counted because it preceded the effective date of Section 1542, it did not reach the second issue.

It will be observed that Section 1542(a) sets forth two requirements for a determination that a person is a habitual offender: first, the offenses must be those described and enumerated in sub-section (b) of Section 1542[3] and second, the offenses must have been committed "after the effective date of this title." The

---

[3] 75 Pa. C. S. §1542(b) reads as follows:

(b) *Offenses enumerated.*—Three convictions arising from separate acts of any one or more of the following offenses committed either singularly or in combination by any person shall result in such person being designated as a habitual offender:

(1) Any offense set forth in Section 1532 (relating to revocation or suspension of operating privilege).

(2) Operation following suspension of registration as defined in section 1371 (relating to operation following suspension of registration).

(3) Making use of or operating any vehicle without the knowledge or consent of the owner or custodian thereof.

(4) Utilizing a vehicle in the unlawful transportation or unlawful sale of alcohol or any controlled substance.

(5) Any felony in the commission of which a court determines that a vehicle was essentially involved.

428

trial court held that that language meant offenses committed after July 1, 1977, the date the Code was generally effective. Section 8(a) of the Act of June 17, 1976, P.L. 162.[4]

DOT, however, contends that such an interpretation renders ineffective the language of Section 8(b) of the Appendix to Title 75. There, it is specifically provided that Section 1542, among others, would take effect *immediately*. Since the Governor signed the Code into law on June 17, 1976, D.O.T argues that offenses committed after June 17, 1976 would be subject to the sanctions of Section 1542.

It appears to us that the two clauses, Section 1542 and Section 8(b) of the Appendix to Title 75, are irreconcilable. We must turn then to the provisions of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C. S. §§1501-1991[5] for assistance. Section 1934 of the Statutory Construction Act provides that whenever, in the same statute, several clauses are irreconcilable, "the clause last in order of date or position shall prevail." The statute which enacts the Code contains 8 "sections". Section 1 is the codification of all of the provisions of the Code. Sections 2 through 8 contain the so-called "transition provisions" and, of course, Section 8 is last in order of position in the statute. We hold then, pursuant to Section 1934 of the Statutory Construction Act, that Code Section 1542 (as distinguished from statutory section 8) became effective June 17, 1976 and that offenses committed after that date must be counted in a determination of whether driving privileges should be revoked.

---

[4] Sections 2-8 of the Act of June 17, 1976 comprise and will hereinafter be referred to as the Appendix to Title 75.

[5] Section 6 of the Appendix to Title 75 regarding the inapplicability of certain sections of the Statutory Construction Act to the Code is noted.

Such an interpretation is consistent with other provisions of the Statutory Construction Act, specifically, 1 Pa. C. S. §1921(a) and (c) and 1 Pa. C. S. §1922(2). We are required thereby to construe every statute, if possible, by giving effect to all of its provisions and we may consider in ascertaining the intent of the General Assembly, the mischief to be remedied and the consequences of our interpretation.

There can be no doubt that the legislature carefully considered the impact of an entirely new vehicle code upon the driving public and for that reason provided more than 1 year lead time for the implementation of most of its provisions. At the same time, the legislature did not intend an amnesty for habitual offenders who are a continual menace on our highways and, for that reason, specifically provided for the uninterrupted continuum of sanctions against such drivers. To construe Section 1542 as contended by Mr. Eichhorn would have the practical effect of removing from consideration an offense for which he would have been accountable had not the Code been enacted. We do not think that was the legislature's intention.

We must next consider whether the offense of driving without lights to avoid identification or arrest under the Code of 1959 can be counted as an enumerated offense under the provisions of Section 1542(b). Driving without lights to avoid identification or arrest is an offense for which DOT may suspend operating privileges under Section 1532(b) and Section 1532 offenses are among the enumerated offenses to be counted towards revocation sanctions under Section 1542(b). It is true, of course, that the identification section numbers for the offense are different in the two codes but we think it is clear that it is the nature of the offense, not its code identification number, that controls. Such an interpretation again considers the

mischief to be remedied and the consequences of the result.

We conclude, therefore, that Mr. Eichhorn was properly classified as a habitual offender by DOT and that the revocation of his driving privileges was required by the provisions of the Code.

## Order

The order of the Lancaster County Court of Common Pleas dated October 7, 1980 is reversed.

---

Dissenting Opinion by Judge Doyle:

Regrettably I must dissent. Contrary to the conclusion of the majority, I am convinced that the legislature did indeed intend to provide amnesty for licensees from the imposition of revocations and suspensions during the transition period from the largely discretionary license suspension system of the 1959 Vehicle Code to the mandatory suspension provisions of the 1976 Vehicle Code. For example, all previous suspensions under Section 618(1)(2) of the 1959 Vehicle Code were rescinded immediately as of the effective date of the new point system, (June 17, 1976).[1] This gives rise to the curious situation that had Mr. Eichhorn's license been suspended for his Section 1038 violation, his license would have been restored immediately upon the enactment of the 1976 Vehicle Code. Additionally, all points that were assessed under former Section 619.1 of the 1959 Vehicle Code were deleted from the records and therefore were "not [to] be used as a basis for suspension",[2] and the records of all previous suspensions and convictions of licensees were to be purged.[3] Further, no suspension or *convic-*

---

[1] Section 2(a) of the Appendix to Title 75 Pa. C. S.

[2] Section 2(b) of the Appendix to Title 75 Pa. C. S.

[3] Section 2(d)(1) and (2) of the Appendix to Title 75 Pa. C. S.

*tion* under Section 618(b)(2) of the 1959 Vehicle Code constituted a suspension for the purpose of determining the length of a suspension under Section 1539 of the 1976 Vehicle Code, relating to the mandatory suspension of a licensee's operating privilege based on an accumulation of points.[4]

The majority opinion hypothesizes that the legislature intended to provide for the uninterrupted continuance of sanctions for "habitual offenders." But the fact is that Section 1542 of the Vehicle Code has no predecessor under the 1959 Vehicle Code and represents a new provision and new concept under the former. Mr. Eichhorn *was* held accountable for a violation of the 1959 Vehicle Code; it is only the license suspension provisions of the 1976 Vehicle Code that concern us in this appeal, and accordingly, had the 1976 Vehicle Code not been enacted, there being no habitual offender provisions under the 1959 Vehicle Code, there would have been no accountability in that regard.

My final reason for dissenting is the specific language of Section 1542(a) defining a "habitual offender" as a licensee who committed certain offenses "after the effective date of this *title*. . . ." (Emphasis added.) I believe the reference is to Title 75 of the Pennsylvania Consolidated Statutes, which is a citation to positive law in the form of an official code. It was not meant as a citation to a title of *Purdon's Statutes,* an unofficial codification by a private publisher. Reference is made to the excellent short treatise by William E. Zeiter, a member of the Joint Committee on Documents under the Commonwealth Documents Law, 45 Pa. C. S. §502, *Introduction to the Pennsylvania Consolidated Statutes,* which is found in the Appendix to Title 1 of the Pennsylvania Consolidated Statutes. He states in the opening paragraph:

---

[4] Section 2(d)(3) of the Appendix to Title 75 Pa. C. S.

Codification of the statutory law has finally come to Pennsylvania. The process will be neither swift nor easy. It is said that the Chinese have a pointed curse: "May you live during a time of transition!"